## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

CHANCE DWAYNE BEROID
                        Plaintiff,

   vs.

CHRISTOPHER LAFLEUR, Jefferson Davis Parish Deputy Sheriff
FERROLL LEBLANC, Jefferson Davis Parish Deputy Sheriff
NAQUAN SENEGAL, Jefferson Davis Parish Deputy Sheriff

                       Defendants.

Civil Action No.

Judge:

Magistrate Judge:

## COMPLAINT AND JURY DEMAND

### Introduction

This case involves the unnecessary and violent electrical shock of Plaintiff Chance Beroid ("Mr. Beroid"), a 30-year-old Black man. Mr. Beroid was seized on March 1, 2020 in Jennings, Louisiana inside his parents' home. Thereupon, without legal justification and without *any* warning, he was shot with a Taser. Three Jefferson Davis Parish deputy sheriffs proceeded to arrest him.

Mr. Beroid suffered puncture and burn marks on his arm and back. Moreover, he suffered trauma and emotional distress that remains to this day. He continues to feel anxious and unsafe around law enforcement.

At bottom, no grounds justified the use of a Taser. After congregating by Mr. Beroid's parents' house for over 30 minutes, the deputy sheriffs knocked on the front door and pushed their way through, vaguely referencing warrants for Mr. Beroid's arrest. Mr. Beroid, though confused, did not flee. Yet, without provocation or warning, and in a matter of mere seconds, the deputy sheriffs shot Mr. Beroid with a Taser as he screamed and fell to the ground. And still, Mr. Beroid did not resist arrest or attempt to run. Instead, he lay facedown on the floor, injured and without a shirt, as the deputy sheriffs demanded that he place his hands behind his back or suffer yet another shock.

Mr. Beroid was not told he was under arrest. Rather, the deputy sheriffs yelled at and berated him, threatening to "light him up again" if he did not do as they said. These actions were taken in complete disregard of the deputy sheriffs' surroundings. Mr. Beroid's godchild was present, as were his parents, younger sister, and cousin.

The deployment of a Taser – a dangerous weapon designed to cause excruciating pain[1] – was objectively unreasonable because Mr. Beroid posed no immediate threat and did not attempt to flee.[2] When the deputy sheriffs knocked on the door, Mr. Beroid spoke to them politely and

---

[1] See Sara Miller & James Benedict, *Shocked by a Taser: "Overwhelming." "Excruciating pain.",* REUTERS, Sept. 20, 2017, https://www.reuters.com/article/us-usa-taser-stunned/shocked-by-a-taser-overwhelming-excruciating-pain-idUSKCN1BV1EW; Erica Goode, *Tasers Pose Risks to Heart, a Study Warns,* The NEW YORK TIMES, April 30, 2012, https://www.nytimes.com/2012/05/01/health/research/taser-shot-to-the-chest-can-kill-a-study-warns.html.

[2] See *Pena v. City of Rio Grande City, Texas,* 816 F. App'x 966, 972 (5th Cir. 2020) (reversing the lower court's grant of summary judgement, in part because "there is no evidence [the plaintiff] posed a threat to the safety of the officers or others"); *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst,* 810 F.3d 892, 903 (4th Cir. 2016) (finding that "tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser… Even noncompliance with police directives and nonviolent physical resistance do not necessarily create a continuing threat to the officers' safety") (internal citations omitted); *Cyrus v. Town of Mukwonago,* 624 F.3d 856, 863 (7th Cir. 2010) (finding that the subject of a seizure refusing to release his arms for handcuffing did not justify deploying a taser when the subject was unarmed and posed no immediate threat to officers). See also *Mattos v.*

2

remained inside the house. There was no indication that he posed any immediate threat to anyone. Indeed, when a deputy sheriff attempted to grab Mr. Beroid by the shirt, he backed *further into the domicile*, clearly not attempting to flee from the scene.

Mr. Beroid is one of innumerable Black men who have been unjustly brutalized by law enforcement.[3] Without accountability, law enforcement will continue to violate the rights of Black people, producing disastrous consequences.[4] In this instance, Mr. Beroid seeks to hold the named deputy sheriff Defendants accountable for the violation of his rights under the U.S. Constitution and Louisiana common and statutory laws.

### Jurisdiction and Venue

1. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution. This Court has jurisdiction over Mr. Beroid's federal claims pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Mr. Beroid's state law claims pursuant to 28 U.S.C. § 1367.

2. On information and belief, the named deputy sheriff Defendants are all residents of the state of Louisiana. Venue is thus proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because

---

*Agarano,* 661 F.3d 433, 446 (9th Cir.2011) (*en banc*); *Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009).

[3] *See* Linda So, *Black Americans disproportionately die in police Taser confrontations*, REUTERS, June 15, 2020, https://www.reuters.com/article/us-minneapolis-police-protests-tasers-in/black-americans-disproportionately-die-in-police-taser-confrontations-idUSKBN23M16E; Frank Edwards, et al., *Risk of being killed by police use of force in the United States by age, race – ethnicity, and sex*, 116 PNAS 16793, 16794 (2019) (finding that Black men are 2.5 more likely than white men to be killed by law enforcement); Mark Hoekstra & Carly Will Sloan, *Does Race Matter for Police Use of Force? Evidence from 911 Calls*, NBER, Feb. 2020, https://www.nber.org/papers/w26774; Oliver Laughland, *US police have a history of violence against black people. Will it ever stop?*, THE GUARDIAN, Jun. 4, 2020, https://www.theguardian.com/us-news/2020/jun/04/american-police-violence-against-black-people.

[4] *See* Jamiles Lartey & Abbie VanSickle, *'Don't Kill Me': Others Tell of Abuse by Officer Who Knelt on George Floyd*, THE NEW YORK TIMES, Feb. 2, 2021, https://www.nytimes.com/2021/02/02/us/derek-chauvin-george-floyd-past-cases.html.

the Defendants reside in this district, and 28 U.S.C. 1391(b)(2) because the wrongful conduct at issue in this matter occurred wholly within this District.

### Parties

3. Plaintiff Chance Beroid is a 30-year-old individual who resides in Jennings, Louisiana.

4. Defendant Christopher LaFleur ("Defendant LaFleur") was, at all relevant times herein, a deputy sheriff in Jefferson Davis Parish Sheriff's Office. On information and belief, Defendant LaFleur resides in Jefferson Davis Parish, Louisiana. Defendant LaFleur is sued in his individual and official capacities.

5. Defendant Ferrell LeBlanc ("Defendant LeBlanc") was, at all relevant times herein, a deputy sheriff in Jefferson Davis Parish Sheriff's Office. On information and belief, Defendant LeBlanc resides in Jefferson Davis Parish, Louisiana. Defendant LeBlanc is sued in his individual and official capacities.

6. Defendant Naquan Senegal ("Defendant Senegal") was, at all relevant times herein, a deputy sheriff in Jefferson Davis Parish Sheriff's Office. On information and belief, Defendant Senegal resides in Jefferson Davis Parish, Louisiana. Defendant Senegal is sued in his individual and official capacities.

7. All Defendants were acting within the scope of their employment and under the color of state law at all times relevant to this Complaint.

### Statement of Facts

8. Defendant LaFleur, Defendant LeBlanc, and Defendant Senegal (collectively, the "Deputy Sheriff Defendants") were wearing body cameras and/or had cameras in or on their vehicles. On information and belief, these cameras recorded the relevant altercation as detailed in this Complaint.

9. On information and belief, the camera footage shows the Deputy Sheriff Defendants' involvement in the resolution of an incident between Mr. Beroid and his fiancée, Ms. Jasmine Goodwin, and his arrest in his parents' home. The footage is also presumed to show the use of a Taser by the Deputy Sheriff Defendants and the period of time between Mr. Beroid's arrest and his arrival at the Sheriff's Office.

10. On March 1, 2020, Mr. Beroid and Ms. Goodwin went bowling on a date night. While bowling, Mr. Beroid and Ms. Goodwin left their three kids at Mr. Beroid's parents' house.

11. After their evening out, Mr. Beroid and Ms. Goodwin went to Mr. Beroid's parents' house to pick up their kids. Before entering the house, they got into a disagreement outside. Ms. Goodwin called law enforcement and the Deputy Sheriff Defendants arrived shortly thereafter.

12. Following the arrival of the Deputy Sheriff Defendants, Mr. Beroid's father came outside of the house and engaged with them, Mr. Beroid, and Ms. Goodwin. The situation was subsequently resolved. Ms. Goodwin went home while Mr. Beroid entered his parents' house, where he intended to stay for the evening.

13. But the resolution of the dispute—the reason the Deputy Sheriff Defendants were called—did not prompt them to leave the scene. Instead, they lingered *en masse* outside Mr. Beroid's parents' house for, on information and belief, 30 to 45 minutes after Mr. Beroid entered the house.

14. On information and belief, after conferring with each other, the Deputy Sheriff Defendants approached Mr. Beroid's parents' house. Defendant Senegal knocked on the door. Mr. Beroid's mother, holding a baby, answered. Defendant Senegal asked her if Mr. Beroid could come outside. In response, Mr. Beroid's mother called for Mr. Beroid.

15. Mr. Beroid came to the door and greeted the Deputy Sheriff Defendants. Defendant LaFleur told Mr. Beroid to "grab his shoes" and stated that Mr. Beroid had to go with the Deputy Sheriff Defendants because there was a warrant out for his arrest. The Deputy Sheriff Defendants did not tell Mr. Beroid that he was under arrest.

16. Mr. Beroid was visibly and obviously confused. He told the Deputy Sheriff Defendants that he did not have an active arrest warrant. With no reason to believe he was being placed under arrest—since he was not told that was the case—Mr. Beroid stepped further into the house, away from the now-crowded vestibule. At this point, all three Deputy Sheriff Defendants, without warning, barged into the house. Defendant LaFleur attempted to grab Mr. Beroid by the shirt. The large shirt slipped off Mr. Beroid, who, taken aback, stepped a few feet back into the hallway.

17. Mr. Beroid did not attempt to flee from the Deputy Sheriff Defendants. Nor did he pose a physical threat to any of them. All he wanted to understand was why they wanted him to go to the Sheriff's Office.

18. Within seconds after entering Mr. Beroid's parents' home, Defendant LaFleur pulled out his Taser and shot Mr. Beroid—shocking him with electrical current designed to produce severe pain. Screaming in agony, Mr. Beroid's body careened and slammed into a door. His body fell with a thud to the floor.

19. Before firing his Taser, Defendant LaFleur *did not* tell Mr. Beroid that he was under arrest; he *did not* tell him to put his hands up; and he *did not* ask him to put his hands behind his back. The fact is, he did not warn Mr. Beroid in any way that he was about to be shot with a Taser. In the end, within 30 seconds of knocking on the door, and without any warning or justification, Defendant LaFleur fired a Taser at Mr. Beroid.

20. Axon Enterprise (formerly known as Taser International), the manufacturer of the Taser, provides safety guidelines for Taser use. These guidelines clearly state that a Taser should not be used on individuals that are "[p]assively resisting and not an immediate threat or flight risk."[5] The guidelines further state that de-escalation should be attempted before Taser deployment. This can be achieved by communicating with the individual and giving the individual the opportunity to voluntarily comply. Finally, the guidelines make clear that a Taser should be deployed so as to minimize dangerous falls, including falls whereby the individual is unable to catch him or herself before hitting the ground.[6]

21. The circumstances in which it is appropriate to use a Taser were not present here. Mr. Beroid was not in flight.  Nor was he violent or demonstrating any tendency to be so. Defendant LaFleur nevertheless failed to warn Mr. Beroid that the deputy would deploy a Taser if Mr. Beroid did not acquiesce to his own arrest.

22. It was only after Defendant LaFleur shot Mr. Beroid with a Taser that Defendant Senegal instructed the screaming Mr. Beroid to fall to the ground. Unable to catch himself, Mr. Beroid fell to the ground on his back and into a bedroom, where his younger sister was sleeping. Upon hitting the floor, he continued to writhe and scream in pain.

23. Upon hearing the commotion, Mr. Beroid's father immediately ran out of another room of the house to see what was going on. Mr. Beroid's father was deeply shocked and upset to see his son shirtless and injured on the ground. Defendant LaFleur's Taser was still pointed at

---

[5] AXON Enterprise, AXON Taser Training Department: Conducted Energy Weapons (CEWs), 22 June 2020 *available at* https://my.axon.com/s/training-resources-instructor-course-pre (emphasis omitted).

[6] *Id*.

Mr. Beroid, who had barbs from the Taser lodged in his arm and back. Distressed, Mr. Beroid's father attempted to get closer to his son, but Defendant Senegal pushed him back. Defendant LaFleur proceeded to tell Mr. Beroid to get on his stomach. He complied.

24. Mr. Beroid now lay shirtless and facedown on the ground as the Deputy Sheriff Defendants towered over him. Defendant LaFleur demanded that Mr. Beroid put his hands behind his back. Without giving him even a moment to comply, Defendant Senegal told Mr. Beroid that Defendant LaFleur would shoot him again if he did not do as he was told. Defendant LaFleur confirmed that he would "light [him] up again" if he did not comply. Mr. Beroid put his hands behind his back, and Defendant Senegal proceeded to place him in handcuffs.

25. As he was being handcuffed, Mr. Beroid explained to the Deputy Sheriff Defendants that they could not have arrest warrants because "those charges were dropped". He also repeatedly asked them what the charges were for and what year they were from. This question was met with silence and confusion by the Deputy Sheriff Defendants. First, Defendant LaFleur stated that he "wasn't sure." Eventually, Defendant LaFleur stated that the charges were from the Jennings Police Department but he did not further specify or provide additional details about the supposed warrants.

26. On information and belief, the Deputy Sheriff Defendants did not know the answer to Mr. Beroid's questions. In fact, on information and belief, before even entering Mr. Beroid's parents' home, and in response to a question about whether Mr. Beroid had any warrants, Defendant LaFleur stated "she [presumably, the dispatcher] said confirmed ... we going to find out."

27. As the Deputy Sheriff Defendants led Mr. Beroid out of his home, he asked his father to record the officers' badge numbers and names—at which point, Defendant LaFleur threatened Mr. Beroid to "walk, before shit gets bad for you."

28. Upon arriving at the Sheriff's Office, the Deputy Sheriff Defendants were met by emergency medical technicians ("EMTs") who removed the Taser barbs from Mr. Beroid's flesh. Defendant LaFleur took pictures of Mr. Beroid's injuries.

29. As they approached Mr. Beroid, Defendant LeBlanc warned the EMTs: "all this is being recorded." The Deputy Sheriff Defendants and the EMTs laughed and joked with each other about the incident as they completed paperwork. Defendant LaFleur and Defendant Senegal mocked Mr. Beroid and his father. Defendant LaFleur referred to Mr. Beroid's father as a "poor, old man" and said "he was about to get fucked up too." Defendant Senegal laughed and agreed that he was about to "slam him" also if he had not backed up from his son when he found him shot and injured on the ground with Taser barbs in his flesh.

30. It was only when he was booked at the Sheriff's Office that Mr. Beroid was finally told what the arrest warrants were for. But no one showed him any proof that the arrest warrants were linked to active charges.

31. The Taser burned Mr. Beroid. He was left with burn marks on his arm and back. Mr. Beroid continues to be anxious and fearful of law enforcement as a result of this incident.

### COUNT I
**Violation under 42 U.S.C. § 1983 – Excessive Force**
(Against Deputy Sheriff Defendants)

32. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

33. Mr. Beroid is a citizen of the United States and all Deputy Sheriff Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

34. The Deputy Sheriff Defendants, at all times relevant hereto, were acting under the color of state law in their capacity as Jefferson Davis Parish Sherriff's Department officers and their acts or omissions were conducted within the scope of their official duties or employment.

35. At the time of the complained events, Mr. Beroid had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

36. Mr. Beroid also had the clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

37. Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

38. The Deputy Sheriff Defendants' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and accordingly violated Mr. Beroid's Fourth Amendment rights.

39. The Deputy Sheriff Defendants' actions and use of force, as described herein, were also malicious and involved reckless, callous, and deliberate indifference to Mr. Beroid's federally protected rights. The force used by these Deputy Sheriff Defendants was also disproportional to the conduct at issue.

40. None of the Deputy Sheriff Defendants took reasonable steps to intervene and protect Mr. Beroid from the objectively unreasonable and excessive force of the other Deputy Sheriff Defendants, despite being in a position to do so. They are each therefore liable for the injuries

and damages resulting from the objectively unreasonable and excessive force of each other officer.

41. Under information and belief, all Deputy Sheriff Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Beroid's federally protected constitutional rights.

42. Under information and belief, they did so with shocking and willful indifference to Mr. Beroid's rights and their conscious awareness that they would cause Mr. Beroid physical and emotional injuries.

43. The acts or omissions of the Deputy Sheriff Defendants were moving forces behind Mr. Beroid's injuries.

44. These Deputy Sheriff Defendants acted in concert and joint action with each other.

45. The acts or omissions of Deputy Sheriff Defendants as described herein intentionally deprived Mr. Beroid of his constitutional rights and caused him other damages.

46. The Deputy Sheriff Defendants are not entitled to qualified immunity for the complained of conduct, as their conduct violated Mr. Beroid's constitutional rights and was objectively unreasonable.

47. As a proximate result of the Deputy Sheriff Defendants' unlawful conduct, Mr. Beroid suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

48. Mr. Beroid is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

49. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the Deputy Sheriff Defendants under 42 U.S.C. § 1983, in that the actions of each of these Deputy Sheriff Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Beroid.

## COUNT II
### Negligence
(Against Defendants LeBlanc and Senegal)

50. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

51. Defendants LeBlanc and Senegal owed a duty to Mr. Beroid to protect him from undue harm during his arrest.

52. Defendants LeBlanc and Senegal breached this duty when they failed to intervene when Defendant LaFleur used his Taser on Mr. Beroid.

53. As a direct and proximate result of the acts of the Defendants LeBlanc and Senegal described herein, Mr. Beroid suffered physical injury, psychiatric distress, and continues to suffer from severe and shock, distress, anguish, sorrow, and loss of enjoyment of life.

54. The aforesaid physical and psychological injuries sustained by Mr. Beroid were caused wholly or exacerbated by the negligent acts of the Defendants LeBlanc and Senegal as described herein.

## COUNT III
### Intentional Infliction of Emotional Distress
(Against Deputy Sheriff Defendants)

55. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

56. Mr. Beroid asserts violations of Louisiana law relative to intentional torts by Defendants La Fleur, LeBlanc, and Senegal of the Jefferson Davis Parish Sheriff's Office, all of

whom were acting within the course and scope of their employment with the Jefferson Davis Parish Sheriff's Office.

57. The Deputy Sheriff Defendants at all times relevant hereto were acting under the color of state law.

58. The acts or omissions of the Deputy Sheriff Defendants, as described herein, deprived Mr. Beroid of his constitutional rights and caused him other damages.

59. As a direct and proximate result of the intentional acts of the Deputy Sheriff Defendants described herein, carried out in reckless disregard, falsity and/or without sufficient factual information, Mr. Beroid suffered physical injury, psychiatric distress, and continues to suffer from severe and shock, distress, anguish, sorrow, and loss of enjoyment of life.

60. The aforesaid physical and psychological injuries sustained by Mr. Beroid were caused wholly by reason of the intentional, reckless and/or negligent acts of the Deputy Sheriff Defendants as described herein.

61. The Deputy Sheriff Defendants engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to oppress and harm Mr. Beroid and/or with reckless disregard of the consequences of their actions and omissions, and as a result, Mr. Beroid is entitled to damages in an amount to be proven at trial.

## COUNT IV
**Negligent Infliction of Emotional Distress**
(Against Deputy Sheriff Defendants)

62. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

63. Mr. Beroid asserts violations of Louisiana law relative to negligent torts by Defendants La Fleur, LeBlanc, and Senegal of the Jefferson Davis Parish Sheriff's Office, all of

whom were acting within the course and scope of their employment with the Jefferson Davis Parish Sheriff's Office.

64. The Deputy Sheriff Defendants at all times relevant hereto were acting under the color of state law.

65. The acts or omissions of the Deputy Sheriff Defendants, as described herein, deprived Mr. Beroid of his constitutional rights and caused him other damages.

66. The Deputy Sheriff Defendants breached their duty of care to Mr. Beroid resulting in harm to Mr. Beroid within the scope of protection of the duty they owed him. As a result of their negligent acts, Mr. Beroid suffered physical injury, psychiatric distress, and continues to suffer from severe and shock, distress, anguish, sorrow, and loss of enjoyment of life.

67. The aforesaid physical and psychological injuries sustained by Mr. Beroid were caused wholly by reason of the negligent acts of the Deputy Sheriff Defendants as described herein.

68. The Deputy Sheriff Defendants acted with reckless disregard of the consequences of their actions and omissions, and as a result, Mr. Beroid is entitled to damages in an amount to be proven at trial.

## COUNT V
**Aggravated Assault**
(Against Defendant LaFleur)

69. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

70. Mr. Beroid asserts violations of Louisiana law relative to intentional torts by Defendant La Fleur of the Jefferson Davis Parish Sheriff's Office. He was acting within the course and scope of his employment with the Jefferson Davis Parish Sheriff's Office.

71. Defendant LaFleur at all times relevant hereto was acting under the color of state law.

72. Defendant LaFleur threatened to cause physical injury to Mr. Beroid with the use of a Taser, which is a dangerous weapon.

73. The acts or omissions of Defendant LaFleur, as described herein, deprived Mr. Beroid of his constitutional rights and caused him other damages.

74. As a direct and proximate result of the intentional acts of Defendant LaFleur described herein, carried out in reckless disregard, falsity and/or without sufficient factual information, Mr. Beroid suffered physical injury, psychiatric distress, and continues to suffer from severe shock, distress, anguish, sorrow, and loss of enjoyment of life.

75. The aforesaid physical and psychological injuries sustained by Mr. Beroid were caused wholly by reason of the intentional acts of Defendant LaFleur as described herein.

76. Defendant LaFleur engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to oppress and harm Mr. Beroid, and as a result Mr. Beroid is entitled to damages in an amount to be proven at trial.

## COUNT VI
**Aggravated Battery**
(Against Defendant LaFleur)

77. Mr. Beroid repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

78. Mr. Beroid asserts violations of Louisiana law relative to intentional torts by Defendant La Fleur of the Jefferson Davis Parish Sheriff's Office. He was acting within the course and scope of his employment with the Jefferson Davis Parish Sheriff's Office.

79. Defendant LaFleur at all times relevant hereto was acting under the color of state law.

80. Defendant LaFleur used a Taser, which is a dangerous weapon, to cause harm to Mr. Beroid.  Defendant LaFleur intended to cause such harm when he fired this very weapon, which made offensive contact with Mr. Beroid.

81. The aforesaid physical and psychological injuries sustained by Mr. Beroid were caused wholly by reason of the intentional acts of Defendant LaFleur as described herein.

82. Defendant LaFleur engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to oppress and harm Mr. Beroid, and as a result Mr. Beroid is entitled to damages in an amount to be proven at trial.

**WHEREFORE**, Mr. Beroid requests the following relief against all Deputy Sheriff Defendants:

    a) Compensatory damages;
    b) Punitive damages;
    c) Special damages;
    d) Reasonable attorneys' fee and costs;
    e) Prejudgment interest;
    f) Such other relief as this Court may deem just and proper.

Dated: March 1, 2021

Respectfully submitted,

*/s/ Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile:(504) 613-5611
bhamilton@laaclu.org

*and*

Peter Sullivan (*pro hac vice application pending*)
Rumbidzai Maweni (*pro hac vice application pending*)

> Ethan Severance (*pro hac vice application pending*)
> Rachel L. Davidson (*pro hac vice application pending*)
> FOLEY HOAG LLP
> 155 Seaport Blvd
> Boston, Massachusetts 02118
> Telephone: 617.832.1000
> Facsimile: 617.832.7000
> psullivan@foleyhoag.com
> rmaweni@foleyhoag.com
> eseverance@foleyhoag.com
> rdavidson@foleyhoag.com
>
> *Counsel for Plaintiff*