## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

CHANCE DWAYNE BEROID        :        CIVIL ACTION NO. 21-cv-516

VERSUS        :        JUDGE TERRY A. DOUGHTY

CHRISTOPHER LaFLEUR, ET AL.        :        MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss [doc. 18] filed pursuant to Federal Rule of Procedure 12(b)(6) by defendants Christopher Lafleur, Ferroll Leblanc, and Naquan Senegal (collectively, "defendants"). This motion was filed in response to the amended complaint brought by plaintiff Chance Dwayne Beroid ("Beroid"). Doc. 16. The motion is opposed by Beroid. Doc. 32.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, it is

RECOMMENDED that the Motion to Dismiss [doc. 18] be GRANTED and that plaintiff's claims under 42 U.S.C. § 1983 be dismissed with prejudice. Additionally, we RECOMMEND that the court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims and DISMISS plaintiff's state law claims without prejudice.

## I.
### BACKGROUND

Beroid filed suit against defendants, both individually and in their official capacities as deputies with the Jefferson Davis Parish Sheriff's Office, for "violation of his rights under the U.S.

Constitution and Louisiana common and statutory laws" stemming from his arrest at his parents'

home in March of 2020. *See generally* doc. 1. After defendants' filing a Motion to Dismiss for

Failure to State a Claim [doc. 14] as to the claims against defendants in their official capacity,

plaintiff amended his complaint to allege that defendants were acting individually. Doc. 16. In

his amended complaint plaintiff references the fact that video evidence was available and provides

an internet link where the video can be found. *Id.* at p. 5, ¶ 8. A copy of that video and several

other videos of the incident were also provided as manual attachments to the petition. Doc. 17.

Plaintiff's complaint states that officers approached the home of his parents after having

earlier responded to a domestic call that involved plaintiff and his fiancé.[1] Doc. 16, pp. 6-7, ¶¶ 10-

15. Plaintiff complains that defendants "lingered *en masse*" outside his parents' home until they

approached the home, knocked on the door, and asked plaintiff's mother if plaintiff could exit the

home. *Id.*, p. 7, ¶¶ 16-17. Plaintiff came to the door and was told by officers to get his shoes, that

he was to go with them as there was a warrant outstanding for his arrest. *Id.* at ¶ 18. Plaintiff

denied the existence of an active warrant for his arrest and "[w]ith no reason to believe he was

being placed under arrest – since he was not told that was the case," he backed further into the

house.[2] *Id.* at ¶ 19. Plaintiff goes on to allege:

> At this point, all three Deputy Sheriff Defendants, without warning, barged
> into the house.[3] Defendant LaFleur attempted to grab Mr. Beroid by the

---

[1] Pages 1-3 of the complaint contain unnumbered paragraphs that describe generally how plaintiff interprets events as the occurred on the night in question. It further cites articles describing the amount of pain inflicted by a taser, some case law on appropriateness or inappropriateness of use of tasers by law enforcement, and how he "is one of innumerable Black men who have been unjustly brutalized by law enforcement." Doc. 16, p. 3. In our handling of this motion we are dealing only with the discreet facts alleged by plaintiff beginning at page 5.

[2] Several times throughout the complaint plaintiff complains that officers did not tell him he was "under arrest." We have grappled with the significance of this fact. From the plaintiff's written complaint it is clear that officers were attempting to take him into custody because of the existence of an outstanding warrant. Plaintiff does not explain or provide any jurisprudence that would make clear the significance of whether or not the officers stated "you are under arrest" or whatever similar verbiage plaintiff would suggest was owed.

[3] In the earlier portion of the complaint discussed at fn. 1, plaintiff claimed that defendants "pushed their way through" the front door. Doc. 16, p. 2. We are unclear whether there is a difference between "pushed their way through" and

shirt.  The large shirt slipped off Mr. Beroid who, taken aback, stepped a
few feet back into the hallway.

*Id.*  He claims he did not attempt to flee, he posed no physical threat to the officer, that "[a]ll he

wanted to understand was why they wanted him to go to the Sheriff's Office."  *Id.* at ¶ 20.

And then, "[w]ithin seconds after entering Mr. Beroid's parents' home, Defendant LaFleur

brandished his Taser and shot Mr. Beroid."  *Id.* at ¶ 21.  He claims that, at no time prior to the

officer's use of this force, was he told he was under arrest, told to put his hands up, or told to put

his hands behind his back.  "The fact is, [LaFleur] did not warn Mr. Beroid in any way that he was

about to be shot with a Taser."  *Id.* at ¶ 22.

Plaintiff makes claims of excessive force against all deputy defendants.  As noted above,

plaintiff identifies defendant Lafleur as the officer who grabbed his shirt and utilized the taser. *Id.*

at ¶ 21.  Allegations against defendants Leblanc and Senegal are that they failed to take "reasonable

steps to intervene and protect [plaintiff] from the objectively unreasonable and excessive force of

the other Deputy Sheriff Defendants, despite being in a position to do so." *Id.* at p. 13, ¶ 44. He

alleges that the "acts or omissions" of the deputy sheriffs were "moving forces" behind his injuries.

*Id.* at ¶ 47.

Plaintiff claims entitlement to damages under 42 U.S.C. § 1983 for violation of his Fourth

Amendment right "to be secure in his person from unreasonable seizure through excessive force"

as well as his "constitutional right under the Fourteenth Amendment to bodily integrity and to be

free from excessive force by law enforcement."  *Id.* at p. 12, ¶¶ 39-40.  Plaintiff made further

allegations anticipatory of the defendants' inevitable claims of qualified immunity which would

protect them from suit or liability for damages under § 1983, and those allegations are as follows:

---

"barged into the house" but again are relying on the descriptions given in the numbered paragraphs when considering
this motion.

(1) At the time of the complained events, Mr. Beroid had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force. Doc. 16, p. 12, ¶ 39;

(2) Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time. *Id.*, ¶ 41;

(3) The Deputy Sheriff Defendants' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and accordingly violated Mr. Beroid's Fourth Amendment rights. *Id*., p. 13, ¶ 42;

(4) The force used by these Deputy Sheriff Defendants was also disproportional to the conduct at issue. *Id.,* ¶ 43; and

(5) The Deputy Sheriff Defendants are not entitled to qualified immunity for the complained of conduct, as their conduct violated Mr. Beroid's constitutional rights and was objectively unreasonable. *Id.,* p. 14, ¶ 50.

Unlike most claims we are asked to review under Rule 12(b)(6) where we consider only the allegations of the petition, here we are provided a video of the incident. What we see from the video is that deputies knocked on the door of the home of plaintiff's parents and informed plaintiff's mother that they needed to speak with plaintiff. Once plaintiff came to the door, defendant LaFleur informed plaintiff there was an outstanding warrant for his arrest and instructed him to go with the deputies. The plaintiff denied there was a warrant, he disregarded the commands of the officers to exit the home, and he began to back into the residence.

At that point the deputies entered the home – no force involved. Plaintiff's mother attempted to convince him to go with the officers, but he refused, continuing to claim there was no warrant. Defendant LaFleur continued to command plaintiff to step outside and plaintiff continued to back up further into the residence. Plaintiff then turned his back to defendant LaFleur and began to enter a dark hallway. Lafleur then grabbed plaintiff's shoulder (and his shirt) and again instructed him to step outside at which point plaintiff removed his shirt and tossed it at

LaFleur.  Plaintiff continued to walk down the dark hallway and it is at this point that LaFleur shot plaintiff with his taser.

Through the motion before us defendants claim that they are entitled to dismissal of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as it fails to state a claim against them which would entitle him to relief.  Doc. 18.

## II.
### APPLICABLE LAW

**A. *Rule 12(b)(6)***

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  Additionally, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is not to evaluate the plaintiff's likelihood of success, but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The court also reviews such motions "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc*., 599 F.3d 458, 461 (5th Cir. 2010). While factual assertions are presumed to be true, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When a plaintiff chooses to attach exhibits to his petition then the court is entitled to consider the exhibits, including video evidence, and the court is not required to favor the allegations over the video evidence. *Hartman v. Walker*, 685 F. App'x. 366, 368 (5th Cir. 2017). When there is video evidence involved, a court is not required to accept factual allegations that are contradicted by the record but rather the court should "'view[ ] the facts in the light depicted by the videotape.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 127 S.Ct. 1769, 1777 (2007)).

Our 12(b)(6) inquiry, then, is whether the allegations of plaintiff's complaint, when considered together with the video evidence he attaches thereto, are sufficient to state a claim of excessive force upon which relief could be granted.

### B. *Claims Covered by 42 U.S.C. § 1983 – Excessive Force*

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. *Milligan v. City of Slidell*, 226 F.3d 652, 654 (5th Cir. 2000). To establish a claim of excessive force under the Fourth Amendment a plaintiff must demonstrate "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

Excessive force claims arising from an arrest invoke the protection provided by the Fourth Amendment of the United States Constitution against "unreasonable seizure." *Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989). Fourth Amendment jurisprudence, however, has long recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 1871-72. Assessing the reasonableness of a police officer's use of force involves "a careful balancing of the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 1871.  The test of reasonableness of an officer's actions is not capable of precise definition or mechanical application; rather, proper application "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 1872.

Also, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*    We are to consider only facts that were knowable to the defendant officers.  *White v. Pauly*, 137 S.Ct. 548, 550 (2017).  "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Graham,* 109 S.Ct. at 1872.  Officers are not required to avail themselves of the least intrusive alternative in responding to and making decisions in an exigent situation; the appropriate inquiry is only whether they acted reasonably.  *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994).

### C.  *Claims Covered by 42 U.S.C. § 1983 – Bystander Liability*

Although plaintiff includes defendants Leblanc and Senegal in his excessive force claims, he actually asserts a claim of "bystander liability" which the Fifth Circuit has recognized may attach to officers "who [were] present at the scene and d[id] not take reasonable measures to protect a suspect from another officer's use of excessive force." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  However, bystander liability attaches only "where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent

the harm; and (3) chooses not to act.'"  *Whitley v.* Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)).

### D.  Qualified Immunity

Even in the event the court were to conclude that plaintiff adequately alleged a claim that his constitutional rights were violated, defendants may nevertheless be shielded from litigation and liability by virtue of qualified immunity.  Although technically considered an affirmative defense that would be raised by answer, defendant officers may nevertheless raise the issue through the filing of a Rule 12(b)(6) motion.  Because it shields "government officials performing discretionary functions" from civil liability for claims under federal law,

> "[q]ualified immunity questions should be resolved 'at the earliest possible stage in litigation," usually before discovery. Resolving the applicability of qualified immunity as early as possible serves to protect officials not only from unwarranted liability but also from "costly, time-consuming, and intrusive" pre-trial discovery.

*Randle v. Lockwood*, 666 Fed.Appx. 333, 335–36 (5th Cir.2016) (internal citations omitted).  It is "an '*immunity from suit* rather than a mere defense to liability.'"  *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (emphasis in original) (quoting *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985)).  Defendants here have claimed qualified immunity in their Rule 12(b)(6) motion.

Although qualified immunity is nominally an affirmative defense, it is the plaintiff that has the burden to rebut the defense by "establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct" according to that law.  *Gates v. Texas Dep't of Protective & Regul. Servs.*, 537 F.2d 404, 419 (5th Cir. 2008).

> In *Saucier* [*v. Katz*]*, 533 U.S. 194, 121 S.Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity

claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan*, 129 S.Ct. 808, 815–16 (2009) (internal citations omitted). Although *Saucier* mandated a sequence of consideration, the *Pearson* court held "the *Saucier* protocol should not be regarded as mandatory in all cases" and the court may exercise discretion in deciding which of the two prongs should be addressed first. *Id.* at 818.

As the Fifth Circuit has recently noted:

In excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 778–79, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver,* 410 F.3d at 750.[3]

"Whether an official's conduct was objectively reasonable [in light of the law that was clearly established at the time of the disputed action] is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

*Tucker,* 998 F.3d at 172.

Where, as here, multiple defendants have been accused of activity that would be protected by qualified immunity, each defendant's entitlement to that immunity must be considered on an individual basis. *Meadours v. Ermel,* 483 F.3d 417, 421-22 (5th Cir. 2007).

### III.
### ANALYSIS

#### A. *The Excessive Force Claims and Qualified Immunity*

The excessive force about which plaintiff complains is one moment of force – the point at which defendant LeBlanc tased him. The "well pleaded facts" of plaintiff's complaint as outlined might, when considering the nuances of his actions as he describes them, paint a picture that, if accepted as true (as we must when considering a motion to dismiss under Rule 12(b)(6)), might support a claim that the officers acted unreasonably or excessively and might, therefore, allow his claim to survive the motion. But the video contradicts plaintiff's allegations in aspects important to the claims of excessive force.

For example, contrary to plaintiff's allegations, the video does not show that the officers "barged into the house" but rather shows that they were following him into the home after he, by his own admission even in the written pleadings, retreated into the home rather than follow their commands to exit.[4] Further the video belies plaintiff's allegation that the officers were not provoked – the video shows clearly that plaintiff was refusing to obey the commands of the defendants who were attempting to execute an arrest warrant and he was acting in a manner that could reasonably be construed by a reasonable officer on the scene as "resisting an officer," a crime (albeit a misdemeanor) in and of itself.[5] While plaintiff claims in his petition that he did not

---

[4] Plaintiff explains why he retreated into the home when he states in the complaint that he "was visibly and obviously confused" and "[w]ith no reason to believe he was being placed under arrest . . . he stepped further into the house . . . ." Doc. 16 at p. 7, ¶ 19. Why plaintiff did what he did is of no moment. Excessive force is measured by the objective circumstances, not by the subjective intentions of the arrestee. *See Graham,* 109 S.Ct. at 1872.

[5] "Resisting an officer is the intentional . . . resistance to . . . an individual acting in his official capacity and authorized by law to make a lawful arrest." La. Rev. Stat. Ann. § 14:108. This is a crime punishable by a fine of not more than $500 and a term of imprisonment of not more than 6 months. *Id.* We are unable to assess the severity of the crime for which the warrant was outstanding – neither plaintiff nor defendants have provided us with that information. Plaintiff's resistance to arrest was initially relatively minor until he entered the dark hallway where the officers could not see what he was doing.

attempt to flee, review of the video would support a conclusion by a reasonable officer on the scene that his disappearance down a dark hall was an attempt to flee. At the time plaintiff entered the dark hallway, an objective officer on the scene would have no means of knowing what plaintiff intended to do, whether he was planning to run away or to procure a weapon. All that reasonable officer would know at that point is that the arrestee was non-compliant, was avoiding being taken into custody, and removed himself from clear sight. In short, the video dismantles the allegations of the complaint that might lend credence to a conclusion that the use of the taser was unreasonable. A review of the video shows that defendant Lafleur's use of the taser was reasonable.

This conclusion is supported by jurisprudence. For example, in *Cloud v. Stone*, 993 F.3d 379 (5th Cir. 2021), the court affirmed the district court's decision on summary judgment that an officer justifiably used a taser "primarily because a reasonable officer would have believed that [the arrestee] was resisting arrest at the time." *Id.* at 383. The court in *Cloud* stated:

> Our cases on police use of tasers have paid particular attention to whether officers faced active resistance when they resorted to a taser. Where, as here, the severity of crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify this degree of force.

*Id.* at 384. Plaintiff was resisting arrest. Once he entered that dark hallway after having ignored the officers' commands, he rendered the threat to the officers' safety unable to be assessed and thus justified the officer's use of the taser.

Defendants Leblanc and Senegal are accused of bystander liability. Even assuming Lafleur's use of the taser was unreasonable, from video evidence it is obvious that neither could be found to have known that Lafleur was going to use the taser and neither had any opportunity, much less a reasonable one, to act. From the video we see that Lafleur tased plaintiff as soon as he entered the hallway – neither fellow officer had adequate time to intervene before the deed was

done. Accordingly, we conclude that the allegations of the complaint when considered with the video evidence are not sufficient to state a claim of bystander liability for use of unreasonable force by another and recommend that defendants Leblanc and Senegal be dismissed for plaintiff's failure to state a claim against them.

Even in the event we were to conclude that use of the taser was unreasonable, we would nevertheless conclude that these defendants would be protected from this litigation by application of the principles of qualified immunity.

As we note earlier, it is incumbent upon plaintiff to rebut the defendants' qualified immunity defense. When considering the qualified immunity defense we must consider whether the alleged facts, supplemented in this case by the video evidence, make out a violation of a constitutional right. This is the first prong of the qualified immunity inquiry. *Saucier*, 121 S.Ct. at 2156. We have already concluded that there was no violation of a constitutional right and that defendant Lafleur's use of a taser was reasonable but nevertheless consider qualified immunity as though we had not so found.

To overcome the second prong of the qualified immunity defense, plaintiff must establish that the allegedly violated constitutional rights were clearly established at the time of the incident. *Id.* Plaintiff has failed to meet his burden. Plaintiff has failed to set forth established law that existed at the time in question that rendered the conduct objectively unreasonable, the contours of which jurisprudence were "sufficiently definite" so that the reasonable official would have understood that he was violating it. *Tucker,* 998 F.3d at 172.

In his opposition to the Motion to Dismiss, plaintiff claims he has "satisfied his burden to allege a violation of his right to be free from excessive force . . . ." Doc. 32, p. 8. No one questions that plaintiff has a constitutional right to be free from excessive force. The issue is whether the

force was excessive as a matter of law and we have concluded that it was not. A great portion of his memorandum in opposition is devoted to his characterization of events as they occurred on the night in question, including his thoughts and impressions at the time,[6] but we are able to characterize the events ourselves by viewing the video and determining what the reasonable officer would have seen before engaging in the moment of force.

Even in the event the use of force had been unreasonable, these officers are nevertheless entitled to immunity from suit and liability and we recommend that all federal claims against them be dismissed.

### B. *Louisiana State Law Claims*

Plaintiff has also stated several claims under Louisiana state law against defendants, including negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, aggravated assault, and aggravated battery. Doc. 16, pp. 14-19.

In their motion to dismiss, defendants moved to dismiss "all claims" for the sole reason being that they are entitled to qualified immunity. Doc. 18, p. 1. Defendants offer only one sentence in addressing the state law claims: that the standard for qualified immunity under Louisiana state law is the same as that set forth by federal law. *Id*. at att. 1, p. 12. Plaintiff provides no argument regarding the propriety of the dismissal of his state law claims.

"In evaluating a motion to dismiss a state claim on the grounds of qualified immunity, federal courts must apply the state's substantive law of qualified immunity." *Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008). The claims stated by plaintiff are tort claims and, contrary to defendants' contention, qualified immunity does not apply to Louisiana tort claims. Instead, Louisiana's discretionary immunity statute applies to those claims. *Glaster v. City of Mansfield*,

---

[6] Plaintiff's subjective impressions are of no consideration here. *See* fn. 4.

2015 WL 852412, at *10 (W.D.La. 2015). The immunity offered by Louisiana's discretionary immunity statute is an affirmative defense that must be specifically pled and as such, the defendant bears the burden of proving that this statutory immunity applies. *Mitchell v. City of New Orleans*, 184 F.Supp.3d 360, 377 (E.D.La. 2016). Defendants offer no argument regarding the applicability of the discretionary immunity, and as such, the merits thereof have not been properly placed before us for consideration.

Notwithstanding, we recommend that dismissal is nonetheless the appropriate remedy for the state law claims. Once a court dismisses all of the plaintiff's federal claims, it may then decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). In fact, the Fifth Circuit has consistently held that "the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 2009) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).  Upon dismissal of the federal claims, this case would now become solely a matter of state law and we find it proper to decline extension of supplemental jurisdiction over such. Accordingly, plaintiff's state law claims should be dismissed without prejudice.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [doc. 18] be **GRANTED** and that plaintiff's claims under 42 U.S.C. § 1983 be dismissed with prejudice. Additionally, we **RECOMMEND** that the court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims and **DISMISS** plaintiff's state law claims without prejudice.

Under the provisions of 28 U.S.C. §636 and Fed.R.Civ.Proc. 72, parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's

objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.

THUS DONE AND SIGNED in Chambers this 2nd day of June, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE